Next case is Mitchell Enterprises v. General Services Administration, 2007 Mr. Weir, when you are ready. Good morning. May it please the court. Good afternoon. Is it good afternoon? I'm not wearing a watch. Well, we have a good time here. This is a case of interpretation of specifications and drawings. It is a case of what fits in a space between the top of a ceiling and the bottom of a beam above it. Now, in order to determine what fits in there, you look to the plans and you look to the specifications. The court, or the board, in the case below, has acknowledged that the ductwork, the mechanical work, the piping, the electrical work, and the fireproof piping will not fit in the space that I have described, which is from the top of the ceiling to the bottom of the beam. So, the board says that the only way that everything will fit in the space will be by using the space above it, which we have designated in this claim as the beam space. Why is that so terrible? The specification says that the drawings are just diagrammatic in nature and not completely descriptive of the requirements. In other words, there is some discretion left in the contractor. Further in the contract is a reference to general location. We do not dispute that, Your Honor. That's what they say. The drawings reflect that all of the ductwork, all of the piping, all of the HVAC work, all of the mechanical work, all of the plumbing work fits and was drawn in the space between the top of the ceiling and the bottom of the beam. The interstitial space? The interstitial space is a term we adopted to talk about this so we could label it. It could have easily been called attic space. In other words, it was doable. We're asking whether you're entitled to more money or whether it was basically in the contract which provides for discretion in the contractor. Yes, sir. The provisions the court just read are what are called general instructions. They're general instructions because they appear in the general part of the specifications. They don't appear in Division 15. Division 15 of the specifications are the instructions to the mechanical and piping contractor for doing the work. You have to particularly look at A2122, which gives the instructions for the installation of the piping system. If you look at A2363, it gives the instructions for the installation of the duct system. It is important to note that in the instructions, in those two instances, the instructions are first of all that the piping is unique. So follow everything we say. The second is that this piping has been sized to fit what we have drawn. The duct work says something similar, except it says that the duct system design, as indicated, has been used to select and size the air moving equipment. Which means that if you change through offsets and moving it up and down, you've changed the flow of air of what's been designed. Isn't the main point questioned whether you were already obligated to perform the work you did? No, Your Honor. It is whether or not we performed additional work by using an area that was not designated in the drawings. But if you were obligated to do the work, and you were given discretion as to how you did it, then you were obligated to do the work for the contract price, and you don't get an equitable adjustment, or whatever you're asking for, for part of the work that was part of the contract. But, Your Honor, we were not obligated to do the work. That's the question. What does the contract say? Our position is we first go to the drawings. What do the drawings say? The drawings show all of the HVAC, mechanical, electrical, and piping in the space from the top of the ceiling to the bottom of the beam. The board below acknowledges that. But the drawings are recognized as being diagrammatic in nature and not completely descriptive. And that would be to move the pipe anywhere in that level. It doesn't have to go right down one corridor. It doesn't have to go right down one boulevard. It doesn't have to go down one particular avenue. It can go down anywhere. So that makes it diagrammatic. It doesn't say that it moves it or changes it. So the board conceded that all of what the LDI Metalworks had to put in, the mechanical HVAC and piping work, were not fit in the area without using the beam space. So we go to the specifications to look and see what they tell us. The Sparing Doctrine was very clear in saying that a general provision does not overturn a specific provision. The specific provisions are in Division 15 that tell the contractor that the duct design, as indicated, has been selected to set up how the air flow. The piping is unique and you must follow the instructions set forth below. The instructions below go on to say that install the piping at the locations that were used to size the pipe. So in other words, again, we're looking at moving it laterally, moving it up and down, but not moving it, not making it an additional fitting to put it into the beam space. Into interstitial space. As we define the interstitial space, it was the space between the top of the ceiling and the bottom of the beam. That you thought you weren't supposed to do unless you got paid extra. Correct. We wouldn't go into the beam space. Now, I believe it's... Remind me, and I think it's in the record and I just don't remember. How did this issue arise in the course of the construction? Was this something that the contractor recognized into the process it wasn't going to fit or how did this arise? August 1st, 2004, I think, or 2002, it's been a long time. LDI was preparing shop drawings. The shop drawings were to show where the piping went, where the duct work went, where the mechanical equipment went. When it was drawn, it was shown that if you used it as drawn, that you had to lower the ceiling by two feet, so if you were a person of five foot or less height, you could walk down the hallway. That's when it was first discovered. Okay, and at that point, the contractor does what? The contractor says it doesn't fit. It doesn't fit in the space that we understand the contract to call for. Was there any communication at that point with the representative of the contracting officer? Yes, Your Honor. And what was the response? Draw it as it's drawn. Draw it as you're proposing. Hatch in the area that is in conflict. I'm not sure I understand what... Well, they wanted us to draw the drawing as the drawing showed it to be. Hatch that area in and draw it as we proposed that it would fit. You mean with the ceiling dropped two feet? Yes, sir. All right. We did that, and they said, that's unacceptable. And we said, what's the next thing we do? And they say, make it fit. Okay. Now, our premise is the drawings are defective. And if you had defective drawings, one of the arguments against us, or being used against us, is that if all the drawings were coordinated, this would have fit. Well, no amount of coordinated drawings can put all of this equipment in that space. It would not work. The cases have held that if there's not enough space allocated for the work to be performed, the drawings are defective. And the contractor is entitled to recover the damages flowing from that bridge. That comes under SPARIN 2, U.S. versus SPARIN. It was impossible to install the ductwork, the piping, as drawn, which was what the contractor was required to do. The contractor maintains that he is entitled to the cost of the additional fittings to make the ductwork, the piping, and the HVA system work. We understand your point. You're into your rebuttal time. Would you like to save it? Save it, please, Your Honor. Fine. Mr. Poirier, French or Poirier? Poirier, Your Honor. Poirier. May it please the Court. It did fit. It's undisputed in this case that all of the various pipes for the fire suppression system, for the heating and air conditioning, ventilation, the sewer pipes, all the different things, there were several different systems, it fit. Is this a fact we have to find, or is this a finding made below to which we owe deference? It was found below. I think it's undisputed. But the question is, where did it fit? And it's undisputed on our side that it would not have fit beneath the beam. Undisputed on your side? You mean you and your colleagues agree? We would be the ones that would be complaining about that. And I think that Mitchell agrees with us that except for a few places where there were additional monies granted for some deviations, that all these systems fit if you include the space between the beams. So to fall within the Spearing Doctrine, it would have been necessary for Mitchell to prove below that all these various systems would not fit even where you include the space between the beams. And they couldn't prove that. They did fit it in. Spearing, as the Court probably knows, involved a pipe that was used at a construction site. And the government gave very specific instructions for the size of the pipe and where it should go and so forth. And it turned out that because of another pipe that had an obstruction in it that nobody knew about, there was flooding and the whole site was broken down. And it turned out that that was not sufficient for its purpose. In this case, the area that was provided for in the drawings was sufficient for its purpose. It fit. This is not a classical design specification. As the example that's usually given is the Simmons case. It's an old case that involved pillars underneath a VA hospital. And the specifications went into great detail. You had to use these materials. You had to put them in in this particular order. It even gave you the number of jackhammer poundings it was supposed to be per installation, seven. Seven times you were supposed to hit with the jackhammer. And in that case, the VA hospital started to sink and the contractor complained. We did it the way you said. It didn't work. And that is a classical design. That's not what we have here. What we have here, in addition to the general description, are these coordination drawings. In other words, the contract as a whole, the government said, look, you're going to have to work together with your people. We want shop drawings. We want you to show us how it's going to fit. We didn't tell them in great detail exactly how you have to make it work. Well, that's what is a little unclear to me. And you can comment on whether you agree or disagree with Mr. Weir's characterization of the contact between the contracting officer's representative and the contractor. But the contractor, I take it, did go to the contracting officer's representative and said it won't fit in this space. And the response, I take it, was not, well, you're not limited to that space. You can use the space between the beams. Is that fair or is that not what happened? That's not my understanding. But insofar as the findings of the fact by the board, the board said is that the contractor did not do the coordination in accordance with the contract. In other words, the contract had a mandatory process. You had to have one certain person be the coordinator. They never did designate one person to be the coordinator for the piping. You're supposed to have certain meetings. You're supposed to have certain drawings. The board said, basically, Mitchell didn't do that. And the board further said that caused problems for Mitchell because certain work was done out of order. In other words, they put in certain things and now all of a sudden everybody has to work around it because that shouldn't have been the first thing to be put in. I don't think that the findings of the board are sufficiently detailed for me to say specifically exactly how it happened. I mean, it looks like the kind of case that could have been resolved in 15 minutes if the contractor had said, my understanding is I've got to put all this stuff below the beams. It won't fit. And you go to the contracting officer and the contracting officer says, well, that's not what you're required to do. You can put it between the beams. Oh, fine. Then we're great with that and we're all set. End of case. I wonder, obviously, there was a failure to communicate at some point. And you say the failure was attributable to Mitchell's failure to comply, as found by the board, with the requirements of the contract for consultation. Yeah. I think the fairest thing to me, I have some views on exactly what happened, but I don't think that the findings of the board will describe it in great detail, so I'm hesitant to offer that up to you. But basically, I think the larger point for me is that we did warrant that all the systems would fit in the available space that included between the beams. In other words, if it hadn't fit in that, then I think you'd be cooked. Right. And that's the Blake case. And the Blake case says that they're not entirely design specifications. They're not entirely performance specifications. You could have a construction specification, which was the Blake case. It gives you general parameters. In other words, you're not free to just put it anywhere you want. But within those parameters, you have discretion to do it the right way. And I think in this case is an even stronger case than the Blake case, because in this case, it was clearly anticipated by the drafters that, you know, to get everything to fit, it's going to need some fiddling, and it really should go and take some extraordinary measures to make sure that this all works together. And so they required shop drawings, and beyond required shop drawings, had mandatory meetings required for the subcontractors to get together, and mandatory that there be some person who had responsibility for doing all that, and that wasn't followed. And they got into trouble. Now, if they had not followed all that but done it right, well, then there would have been no damages. In this case, they didn't follow the instructions, and they did get into trouble. I think the answer to your question is I think that they built the stuff before they tried to figure out where it was all going to go, and I think that's how they got into it. But we don't have a specific report finding on that. We'll give you the same benefit we gave counsel earlier. No penalty for giving up time. You look like you're finished. I am finished, Your Honor, and I respectfully ask that the decision report be affirmed. Thank you. Mr. Weir has a couple of minutes, two and a half minutes. Your Honor, I only have four points to make. First of all, at the beginning, if it didn't fit at the beginning of the job, plans were defective. The question is did the plans and specifications call for it to be in the beam area? No. Defective drawings. A disclaimer on defective drawings. Do not, do not shift the risk of the design. General provisions do not abridge these specific instructions. If the court determines as a matter of law that LDI and Mitchell were to put their work in the beam space, we lose. If they find that the beam space was not part of the original drawings and specifications, we win. Thank you, Your Honors. Very succinctly stated. Thank you, Mr. Weir. Case will be taken under advisement. All rise. The honorable court is adjourned tomorrow morning until 10 o'clock a.m. Thank you, Your Honor.